UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| L&M HEALTHCARE COMMUNICATIONS LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NATALIE PANTANO, *et al.*,<br><br>    Defendants. | Civil Action No.: 22-481(JKS)(AME)<br><br>**SPECIAL MASTER REPORT AND RECOMMENDATION** |

**WOLFSON, Special Master**:

On December 29, 2023, I rendered a Report, recommending to Hon. Andre M. Espinosa, U.S.M.J., that the motion to amend, filed by Defendant Lumanity Creative Strategy and Engagement, Inc., formerly known as Guidemark Health, Inc. ("Defendant" or "Lumanity"), be denied based on futility grounds (the "R&R"). The parties objected to my R&R,[1] and on April 2, 2024, Judge Espinosa issued an order directing Defendant to supplement its allegations supporting the proposed tortious interference counterclaims against Plaintiff L&M Healthcare Communications LLC ("Plaintiff" or "L&M"). Based on the Court's briefing schedule, Defendant submitted a new version of its Answer to add two Counterclaims, *i.e.*, tortious interference of contract and prospective economic

---

[1] In my previous R&R, I found that while Plaintiff would not be prejudiced by Defendant's amendments, Defendant's proposed counterclaims failed to meet the futility standard. I did not reach the issue of undue delay. I also disagreed with Plaintiff's argument on the protections afforded by the New Jersey litigation privilege. Defendant objected to my recommendation on the issue of futility and Plaintiff objected to my finding related to the applicability of the New Jersey litigation privilege. *See infra*.

advantage (together, "Proposed Counterclaims"). Plaintiff timely filed its opposition, to which Defendant replied. For the reasons set forth below, based on the new rounds of allegations, I recommend to the Court that the Proposed Counterclaims are not futile under Rule 15(a), and that the amendment may be granted on the basis that it meets Fed. R. Civ. P. 8(a) pleading standards.

## I. Background

I incorporate by reference the factual background and procedural history previously set forth in my Report & Recommendation. In the previous R&R, my recommendation of denial was based on the conclusion that Defendant's allegations were insufficient to meet the futility standard. To briefly elaborate, Defendant's earlier counterclaims were based primarily on the December 13th Letter that L&M sent to Organogenesis Inc. ("Organogenesis"), which I found insufficient to meet the malice element of a tortious interference claim. Defendant also predicated malice on certain fees that L&M charged to Organogenesis and the filing of this suit. However, I determined that those allegations were also insufficient to raise allegations of malice above the speculative level; I reasoned:

> Defendant's allegations of a pattern of unjustifiable conduct on the part of L&M are rather seemingly legitimate courses of action taken after L&M determined that its, as well as Organogenesis's, proprietary information was allegedly accessed and misappropriated by Ms. Pantano, with assistance from Ms. Deggendorf. From sending the December 13th Letter to initiating this suit, either construing these acts singularly or in combination, L&M ostensibly took these actions to protect its business interests. Lumanity's allegations that L&M pursued these avenues based on some other ulterior motives lack any additional factual support to meet the plausibility standard under *Twombly/Iqbal*. Even under liberal notice pleading standards, Defendant has not alleged its theory of unjustified

2

interference beyond a speculative level. Indeed, to plead malice, under New Jersey law, requires more than Defendant's supposition of Plaintiff's intent.

*L&M Healthcare Commc'ns LLC v. Pantano*, No. 22-481, 2023 U.S. Dist. LEXIS 235288, at *30-31 (D.N.J. Dec. 29, 2023). I specifically noted that Defendant's allegations are sparse and/or conclusory such that it failed to make out an unlawful interference claim. However, I advised that Defendant may be able to further supplement its allegations to properly plead a claim. Indeed, Judge Espinosa has given Defendant an opportunity to do so.

In its newly Proposed Counterclaims, Defendant shifted gears. It no longer relies on the December 13th Letter;[2] rather, it alleges that once L&M found out that Organogenesis was doing business with Lumanity, "L&M undertook a scheme to try and destroy [Lumanity's] business and contractual relationship with Organogenesis." (Proposed Counterclaims ("PC") ¶ 43.) To effectuate its alleged scheme, Defendant avers that L&M took the following steps: 1) L&M restricted Organogenesis from accessing its speaker bureau portal such that it can transition from L&M to Lumanity, even though L&M was contractually obligated to do so (*id.* ¶¶ 50-51); 2) "L&M refused to relinquish any of the information and documentation within Organogenesis' portal unless Organogenesis first paid L&M an exorbitant amount of money as a 'transition fee,' notwithstanding that such fee was contrary to the plain terms of Organogenesis' contract with L&M" (*id.* ¶ 52); 3) "L&M also falsely informed Organogenesis that both [Lumanity]

---

[2] Because the Proposed Counterclaims does not rely on the December 13th Letter as a basis for Defendant's claims, I am not considering it for the purpose of this R&R.

3

and an Organogenesis employee engaged in criminal activity and falsely claimed that the authorities were being notified" (*id.* ¶ 56); 4) "L&M sought to intimidate Organogenesis with threats of civil litigation and criminal proceedings unless it terminated its contract and business relationship with [Lumanity]," leaving Organogenesis no choice but to retain L&M for services (*id.* ¶ 57); and 5) L&M brought the present lawsuit, and shared the complaint with Organogenesis, in bad faith to further "intimidate Organogenesis to ensure that it terminate its contractual and business relationship with [Lumanity] which to that point had not yet occurred" (*id* ¶¶ 61-62). In sum, Defendant claims that "rather than trying to obtain or maintain Organogenesis' business based upon the quality of L&M's services and products, better pricing, or various other lawful forms of competition, L&M instead made numerous false accusations to Organogenesis about [Lumanity's] conduct, intimidated Organogenesis with idle threats of criminal prosecution and civil litigation,

and sought to make sure that it would be too burdensome, too expensive and not practical for Organogenesis to continue its contractual and business relationship with [Lumanity], thereby forcing Organogenesis to run back to L&M." (*Id.* ¶ 60.)

## II. Futility

Futility means the pleading, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). To determine whether a claim is futile, district courts apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). *See id.* (citation omitted); *Travelers Indemnity Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010)

4

(citation omitted). I must accept as true all well-pleaded factual allegations asserted in Defendant's proposed amended pleading and determine whether the alleged facts support a facially plausible claim. *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

Under Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n. 3 (1984) (quotation and citation omitted). Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a pleading under Rule 12(b)(6). First, a district court must accept all of the pleading's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, a district court must determine whether the facts alleged in the pleading are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.*

### III.     Tortious Interference

**A. Malice**

While Defendant brings two separate interference counterclaims, *i.e.*, prospective economic advantage and existing contractual relationship, the parties' dispute primarily centers on the element of malice, which is essential for both types of interference claims. As I previously delineated, under New Jersey law, a claim for tortious interference must allege: (i) "some protectable right—a prospective economic or contractual relationship"; (ii) "that the interference was done intentionally and with 'malice'"; (iii) "that the interference caused the loss of the prospective gain"; and (iv) "that the injury caused damage." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52 (1989) (internal citations and quotations omitted).  As to malice, state and federal New Jersey courts alike have defined the term malice as "the harm was inflicted intentionally and without justification or excuse." *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996) (quoting *Printing Mart-Morristown*, 116 N.J. at 751); *see, e.g., Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 563 (1955) ("malice, as here used in the legal sense, simply constitutes the intentional doing of a wrongful act without justification or excuse" (internal citations and quotations omitted)); *see also Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 359 (D.N.J. 2019) ("Although the common meaning of malice connotes ill-will toward another person, . . . malice in the legal sense is the intentional doing of a wrongful act without justification or excuse" (internal citations and quotations omitted)).

A defendant "claiming a business-related excuse must justify not only its motive and purpose, but also the means used." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 307

6

(2001). The relevant inquiry for malice is "whether the conduct was sanctioned by the 'rules of the game.'" *Id.* at 306. And, the "line clearly is drawn at conduct that is fraudulent, dishonest, or illegal." *Lamorte*, 167 N.J. at 307 (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 205 (App. Div. 1995)).

As a preliminary matter, Plaintiff argues that because Lumanity's theory of liability is premised on Lumanity's allegation that L&M knowingly made false statements about Lumanity's behavior to Organogenesis, which caused Organogenesis to end its relationship with Lumanity, Lumanity must meet Rule 9(b)'s heightened pleading standard. In other words, according to Plaintiff, fraud-like allegations to support the malice element must be pled with particularity. I disagree. Plaintiff has not cited to any case that imposes such a requirement. Rather, regardless of the type of allegations, elements of a tortious interference need only be pled in accordance with Rule 8(a) — notice pleading standards. *See Suntuity Solar, LLC v. Roseburg*, No. 21-17801, 2022 U.S. Dist. LEXIS 116291, at *9 (D.N.J. June 30, 2022). In fact, the Third Circuit addressed this very issue in *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 187 (3d Cir. 1992). In that case, the defendant, analogizing to antitrust cases, argued that the requirement of wrongful conduct involving malice interjects a heightened standard into a tortious interference claim under New Jersey law. The court rejected that argument, explaining that not only there were no state cases to support that proposition, but it was "not persuaded that [heightened pleading standard] should apply to a New Jersey tortious interference claim. Since the New Jersey courts examining this cause of action in a business context have not articulated a special burden of proof, [the court] hesitate[d] to

do so." *Id.* at 187.[3] Here, Plaintiff has not cited to any case since *Fineman* that has altered that analysis. As such, Defendant need not plead with particularity as to any of the elements of its tortious interference claims, including malice.

As noted *supra*, Defendant's allegations of malice are based on L&M's "scheme" to interfere with Lumanity's contractual relationship, as well as future business ventures, with Organogenesis by restricting Organogenesis from accessing its then-existing portal and imposing an exorbitant fee, using false accusations as threats to intimidate Organogenesis, and filing the present lawsuit to further deter Organogenesis from doing business with Lumanity. The linchpin of malice, as alleged, is L&M's desire to lure Organogenesis back to L&M with false accusations of wrongdoing on the part of Lumanity.[4]

Plaintiff argues that none of these allegations cure the deficiencies that I identified in my previous R&R. In doing so, Plaintiff points to evidence collected during discovery

---

[3] In fact, in my *Graco* opinion, I cited to *Fineman* in noting that "the Third Circuit has rejected a heightened evidentiary requirement for tortious interference claims, and it follows that there would be no heightened pleading standard for such claims." *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 U.S. Dist. LEXIS 26845, at *68 n.14 (D.N.J. Mar. 31, 2009).

[4] In its previous Opposition Brief, Plaintiff asserted New Jersey's litigation privilege to protect its communications with Organogenesis in the December 13th Letter. Because Defendant no longer relies on such a Letter, the privilege issue appears to be moot. On that point, however, I note that while Defendant has chosen to allege its counterclaims without any mention of the Letter, to the extent that it intends to use the Letter as evidence to prove malice in this case, the litigation privilege issue may very well be relevant at that time. Moreover, Plaintiff nevertheless argues, without legal support, that all of the factual bases in Defendant's newly drafted Proposed Counterclaims are subject to the privilege. The litigation privilege is not boundless; Plaintiff has not justified how the privilege applies to the various allegations asserted here.

8

to refute Defendant's allegations. First, Plaintiff takes issue with the allegation that L&M knew that Lumanity's conduct was permitted, yet disabled L&M's employee credentials to prevent any further access by Lumanity, which caused Lumanity to lose Organogenesis's business. (PC ¶¶ 50-51.) To dispute this allegation, citing to Grainer's Declaration, Plaintiff insists that the timing of Lumanity's allegations does not add up, because L&M alleged knowledge of Organogenesis's claims to ownership was sent more than a week after L&M altered access to its STARS platform. But, Plaintiff's argument reads much like one that would be made in a summary judgment briefing rather than in an opposition to a motion to dismiss. As the parties are well aware, on a motion to amend, I have to take the allegations as true and I cannot go beyond the four corners of the Proposed Counterclaims in order to assess futility. Even if there is evidence uncovered during discovery that may contradict Defendant's allegations, the proper forum to raise those arguments is in a summary judgment motion or at trial. Additionally, while Plaintiff maintains that the December 13th Letter—which is no longer referenced in the Proposed Counterclaims—is Lumanity's sole factual basis for L&M's alleged knowledge of Organogenesis's claims to ownership of the information contained in the portal, the allegations are not so limiting. Nowhere in the Proposed Counterclaims does Defendant allege such a fact. Instead, Defendant avers that L&M's general knowledge of ownership is presumably based on the contractual relationship that L&M had with Organogenesis. (PC ¶¶ 49-50.)

Plaintiff further justifies its efforts in regaining control of its computer software after discovering Lumanity's access, claiming that it did so to protect its STARS system

9

from unauthorized "infiltration." However, this argument, too, goes to the truthfulness of Defendant's allegation, which is inappropriately made on a motion to amend. While Plaintiff may prove this fact at trial, on this motion, I am obliged to take the Proposed Counterclaims as true—that L&M restricted Organogenesis from accessing its portal, attempting to interfere with Organogenesis's business relationship with Lumanity. With its amended Proposed Counterclaims, Lumanity has cured its prior deficiency of relying heavily on the December 13th Letter to allege malice. Rather, here, it alleges L&M's scheme to lure Organogenesis by various unlawful means identified in the pleadings.

### B. Causation

Next, Plaintiff argues that Defendant fails to plead the third prong of a tortious interference claim--that the interference caused the loss of a contract or a prospective gain—because it neither alleges any particular set of facts pursuant to Fed. R. Civ. P. 9(b), nor fail to provide any evidence, that would tend to show that but-for L&M's alleged interference, Organogenesis would not have ceased its business relationship with Lumanity. I disagree.

First and foremost, as discussed above, Defendant need not plead this prong with particularity. And, at the pleading stage, Defendant need not provide any evidence when asserting the Proposed Counterclaims. Rather, under Rule 8 pleading requirement, Defendant has to plead sufficient facts regarding causation above a speculative level and it is plausible on its face. With that more lenient standard, I find that Lumanity has adequately alleged causation.

10

Lumanity alleges that "as a result of L&M's false accusations, intimidation and tortious conduct, only a few months into a two-year MSA and before the Start up SOW was completed, Organogenesis terminated its MSA with [Lumanity]" resulting in millions of dollars in damages. (PC ¶ 63.) This adequately alleges causation. The Proposed Counterclaims detail L&M's alleged scheme to interfere with the contractual relationship between Organogenesis and Lumanity. (*See id.* ¶¶ 47-62.) On a Rule 12(b)(6) standard, I am permitted to draw all reasonable inferences, *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921 n.1 (3d Cir 2015), and by doing so, it is reasonable to infer that Organogenesis terminated its relationship with Lumanity because of L&M's interference by various means. Indeed, the inference is particularly apt given the suggestive temporal proximity—after L&M initiated this lawsuit and after a period of alleged interference, Organogenesis abruptly terminated its contract with Lumanity. Even more suggestive, the Proposed Counterclaims allege that "[a]t or around the same time Organogenesis formally terminated its MSA with [Lumanity], L&M and Organogenesis entered into a new MSA and SOW for speaker bureau services." (PC ¶ 65.) Accordingly, Lumanity has met its pleading obligations under the correct Rule 8 pleading standards.

Finally, L&M argues that Lumanity's claims are futile because Organogenesis's own sworn testimony already foreclosed the causation issue as a matter of fact: deposition testimony reveals that it was Lumanity's own questionable business practices, and not L&M, that caused it to stop doing business with Lumanity. This type of argument, again, is not appropriate on a futility analysis as I am not permitted look beyond the Proposed Counterclaims. But, more importantly, even if I were permitted to

11

do so, L&M asks that I weigh the evidence on this motion. Even on a summary judgment motion, let alone a motion to amend, I cannot weigh any evidence as that is reserved solely for the factfinder.

Accordingly, because I recommend that Defendant's Proposed Counterclaims adequately state interference claims, Lumanity's motion to amend its Answer may be granted on this basis.

DATED: May 31, 2024  /s/ Freda L. Wolfson
Hon. Freda L. Wolfson (ret.)
Special Master